UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20085-CR-COOKE

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GEORGE FERRER SANCHEZ,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS THE GOVERNMENT'S RESTITUTION CLAIMS, AND INCORPORATED MEMORANDUM OF LAW**

Defendant, George Sanchez, through undersigned counsel, hereby moves this Court to dismiss the government's two restitution claims set forth in its Restitution Memorandum (DE106), and states:

**1.    Summary of the Argument.**

The government's restitution claims fail for at least three reasons.

First, the Indictment charged Sanchez with conspiracy to conduct a financial transaction "designed . . . to conceal the nature . . . of the proceeds of specified unlawful activity." DE12:3 (citing 18 U.S.C. § 1956(a)(1)(B)). The government seeks restitution for harm to two individuals. But the caselaw makes clear that the "victim" of such a money laundering offense is not an individual person, but society at large, because an "unlawful monetary transaction harms society by impeding law enforcement's efforts to track ill-gotten gains." *United States v. Martin*, 320 F.3d 1223 1227 (11th Cir. 2003) (citation omitted). Consequently, an individual person does not qualify as a "victim" of a money laundering

1

offense for purposes of restitution. *Jordan v. Dep't of Justice*, 173 F. Supp. 3d 44, 56 (S.D. N.Y.) (noting a district court's decision "refusing to accord victim status for money laundering under the Mandatory Victims' Rights Act because 'society at large is generally considered to be the victim of this offense'") (citing *United States v. Crum*, No. 1:05 CR 65, 2006 WL 4102280, at *2 n. 2 (S.D. Ohio Apr. 13, 2006)).

Second, the restitution statute limits recovery to persons "directly harmed" by a conspiracy. 18 U.S.C. § 3663A(a)(2) ("the term 'victim' means . . . in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal conduct, any person *directly harmed* by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.") (emphasis added). Here, the loss amount calculation of the PSI does not even mention the losses of Victim 1 or Victim 2 for which the government seeks restitution. *See* PSI ¶ 18. Neither Victim 1 nor Victim 2 were "directly harmed" by the money laundering conspiracy.

Third, money laundering is not an "offense against property." The term "offense against property" in § 3663A refers to "traditional common-law crimes." *United States v. Collins*, 854 F.3d 1324, 1332 (11th Cir. 2017) (citation omitted). The federal money laundering statute, enacted in 1986, is a "new offense." *Whitfield v. United States*, 543 U.S. 209, 212, 216 (2005). It is not a traditional common law crime.

Moreover, a money laundering conspiracy is an agreement to commit a "financial transaction" involving "the proceeds of some of form of unlawful activity." 18 U.S.C. § 1956(a)(1). Money laundering thus involves a financial transaction in the proceeds of a "*completed* criminal offense." *United States v. Nolan*, 223 F.3d 1311, 1315 (11th Cir. 2000) (emphasis added). By definition, therefore, when a money laundering transaction occurs,

the offense *against* property that generated illicit "proceeds" has already been completed. Money laundering is a subsequent "movement of funds." *See* 18 U.S.C. § 1956(c)(3) (defining the term "financial transaction"). It is not an offense against property.

Accordingly, the government's restitution claims should be dismissed.

**2.     Background.**

The three-count Indictment charged Sanchez with conspiracy to commit extortion in violation of 18 U.S.C. § 1951(a) (Count 1), conspiracy to encourage and induce aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(2) (Count 2), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 3). DE12. Sanchez entered into a plea agreement, in which he agreed to plead guilty to Count 3 (conspiracy to commit money laundering), and the government agreed to dismiss Counts 1 and 2. DE30:1. Aside from Sanchez' agreement to waive "all rights . . . to appeal any sentence imposed, including any restitution order," this plea agreement did not address restitution. DE30:5.

Sanchez signed a factual proffer. DE31. This factual proffer stated that Sanchez was a member of "an alien smuggling conspiracy." DE31:1. The proffer further stipulated that Sanchez and others "conspired to launder funds through the American banking system to promote and further their alien smuggling conspiracy." DE31:1. The proffer stipulated that "the unlawful activity underlying the money laundering conspiracy charged in Count 3 was alien smuggling." DE31:1.

The proffer also stipulated that on or about October 13, 2013, Sanchez conspired to smuggle "Migrant #1 and Migrant #2 from Cuba to the United States." DE31:2. The proffer

further stipulated that Sanchez and his associates conspired to "launder proceeds from the smuggling of Migrant #1 and Migrant #2," through a number of specified checks, on September 5, 2014, September 26, 2014, October 14, 2014, December 17, 2014, January 5, 2014, January 8, 2015, January 19, 2015, January 29, 2015 and January 30, 2015. DE31:2-5.

At Sanchez' plea colloquy, the prosecutor read the factual proffer into the record, and Sanchez agreed with the facts it stated. DE68:15. Sanchez pled guilty to Count 3, and this Court accepted his plea of guilty. DE68:15-16. Counts 1 and 2 were dismissed. DE68:7; DE56:1.

Prior to sentencing, the Probation Office prepared (and then revised) a Presentence Investigation Report (PSI). The revised PSI calculated a base offense level of 26 under the Federal Sentencing Guidelines governing the offense of money laundering, based on its finding that "[t]he value of the laundered funds for which the defendant is responsible is $5,400,000." PSI ¶ 24 (citing U.S.S.G. §§ 2S1.1(a)(2), 2B1.1(b)(10 and 2B1.1(b)(1)(J)). The revised PSI held Sanchez accountable for a total loss amount of $5,400,000, based, in part, on his 20% share of Migrant#2's contract with a Major League Baseball Franchise. PSI ¶ 18. The revised PSI calculated a Guideline range of 108-135 months. PSI ¶ 83.

The government objected to the PSI, arguing that the Guidelines calculations should take account of the money laundering Guidelines' cross-reference to enhancements under the alien smuggling Guidelines for an offense involving (1) smuggling of more than 100 aliens, (2) discharge of a firearm, and (3) foreseeable death. DE38:2. Based on these proposed enhancements, the government recommended a Guideline sentence of 240 months. DE38:3 (citing U.S.S.G. § 2S1.1(a)(1)).

At sentencing, this Court overruled the government's objection, agreeing with the probation office that the information regarding the underlying alien smuggling offense was "impossible or impractical to determine," and that the § 2S1.1(a)(1) cross-reference was therefore inapplicable. DE69:12. This Court therefore calculated the advisory Guideline range based on the money laundering Guidelines. DE69:12. This Court, *inter alia*, overruled the defendant's objection to a two-level enhancement for "sophisticated laundering." DE69:17. In so ruling, this Court stated:

> I agree that Paragraph 26 applies in this case, that the defendant used sophisticated means *in order to launder the money in this matter to prevent, obviously, law enforcement to be easily able to trace the money from his scheme back to him*.

DE69:17 (emphasis added). This Court calculated an advisory Guideline range of 108-135 months, and imposed a sentence of 108 months. DE69:22; 34.

This Court set a restitution hearing for a time to be determined later. DE69:37.

The government thereafter filed a Restitution Memorandum, which identified "two victims of Sanchez' efforts to use violence as a means of developing capital for the alien smuggling and money laundering schemes." DE106:2.

The government identified the first victim as the "Estate of Victim 1." According to the government, Victim 1 was a representative of Mexican Criminal Organizations who collected taxes from smugglers operating in the Cancun region. DE106:2. Sanchez "vehemently resisted paying [these organizations] and rejected their oversight." DE106:2. Victim 1 was shot during a kidnapping effort in November 2009. DE106:2. Subsequently, the family of Victim 1 was extorted by Sanchez and his associates for over $500,000 in

exchange for his release. DE106:1-2. Despite his family transmitting a ransom payment, Victim 1 was never heard from again and is presumed to be deceased. DE106:3.

According to the government, Victim 2 was kidnapped in Cancun, Mexico by associates recruited by Sanchez. DE106:3. Victim 2 was "extorted out of $700,000." DE106:3. The government alleged that Sanchez "utilized the kidnapping to generate capital for his overarching alien smuggling scheme." DE106:3. The government further alleged that Victim 2 incurred roughly $70,000 worth of medical bills due to physical abuse suffered during the extortion. DE106:3.

The government stated that this Court could order restitution under the Mandatory Victims Restitution Act. DE106:3 (citing 18 U.S.C. § 3663A). The government noted that the harm caused to Victims 1 and 2 resulted from the "specific conduct underlying the offense of conviction." DE106:3 (citing *United States v. Ledesma*, 60 F.3d 750, 751 (11th Cir. 1995)). The government stated that "Victim 1 was killed because his activities were contrary to Sanchez' scheme [and] Victim 2 was captured and extorted as part of Sanchez's efforts to raise capital for the overarching scheme." DE106:4. The government concluded that "each claim is properly tied to the money laundering scheme and provides a basis for the sought-after awards." DE106:4.

On June 30, 2020, this Court set a restitution hearing for September 23, 2020. DE117.

**3.     The government's restitution claims should be dismissed**.

The government's restitution claim relies on 18 U.S.C. 3663A(c)(1), a statute that mandates restitution in certain sentencing proceedings. DE106:3. The government specifically relies on the subsection of this statute which mandates restitution for "any

6

offense that is . . . an *offense against property* under this title . . . including any offense committed by fraud or deceit . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." DE106:3 (citing 18 U.S.C. § 3663A(c)(1) (emphasis added). The government also relied on the statutory definition of a "victim." DE106:3. This subsection provides:

> the term 'victim' means a *person* directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered, including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person *directly harmed* by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2) (emphasis added).

> **a. Neither Victim 1 nor Victim 2 qualify as a "victim" for restitution purposes, because society, not an individual person, is the victim of a money laundering offense.**

The offense of conviction in this case was conspiracy to commit money laundering. DE56. The caselaw provides that, generally, the victim of a money laundering conspiracy designed to conceal the nature of the proceeds of unlawful activity is not an individual person, but society at large, because the "unlawful monetary transaction harms society by impeding law enforcement's efforts to track ill-gotten gains." *United States v. Martin*, 320 F.3d 1223, 1227 (11th Cir. 2003) (citation omitted). "[T]he harm from such a transaction does not generally fall upon an individual, but falls upon society in general." *Id*. (citation

omitted).[1]

At Sanchez' sentencing, this Court echoed the caselaw's view regarding the impact of money laundering; as it imposed a sentence enhancement for sophisticated money laundering, this Court stated: "I agree that Paragraph 26 applies in this case, that the defendant used sophisticated means *in order to launder the money in this matter to prevent, obviously, law enforcement to be easily able to trace the money from his scheme back to him*." DE69:17.

Moreover, the money laundering statute criminalizes financial transactions designed either (1) to "*promote* the carrying on of specified unlawful activity," or (2) "to *conceal* or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. §§ 1956(a)(1)(A)(i) & (a)(1)(B)(i) (emphasis added). Here, the Indictment charged only a conspiracy to commit money laundering in violation of § (a)(1)(B) designed to "conceal." DE12 (alleging money laundering "to conceal and disguise . . . and to avoid a transaction reporting requirement under State or Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)."). It "makes

---

[1] *Accord United States v. Acuna*, 313 Fed. Appx. 283, 299 (11th Cir. 2009) (unpublished) (citing *Martin*); *United States v. Aptt*, 354 F.3d 1269, 1276 (8th Cir. 2004) ("the 'victim' of fraud-related money laundering was not the particular victim of the fraud, but rather 'society in general.'") (citation omitted); *United States v. Napoli*, 179 F.3d 1, 7-8 (2d Cir. 1999) (whereas fraud victims "are those persons who have lost money or property as a direct result of the fraud . . . [t]he victim of money laundering is, by contrast, ordinarily society at large.") (citation omitted); *see id.* ("money laundering is a 'victimless crime' that harms society in general") (quoting *United States v. Lopez*, 104 F.3d 1149, 1150 (9th Cir. 1997)); *United States v. Braxtonbrown*, 278 F.3d 1348, 1355 (D.C. Cir. 2002) (noting that the money laundering Guideline "measures the harm to society that the money laundering causes to law enforcement's efforts to detect the use and production of ill-gotten gains.") (citation omitted).

sense" to consider society as the victim of concealment money-laundering because:

> [c]oncealment laundering follows a crime and by itself has no identifiable victim. Moreover, unpenalized use of a sophisticated and complex system of financial institutions to disguise and transfer funds derived from criminal activity would provide a general incentive to engage in the whole universe of crimes involving monetary gain. It is therefore fair to say that the victim of concealment money-laundering is society at large.

249 F.3d 106, 111 (2d Cir. 2000) (Winter, J., concurring).

Thus, neither Victim 1 nor Victim 2 qualify under the definition of a "victim" in § 3663A(a)(2), because the victim of concealment money laundering is not a person, but society at large. *Jordan v. Dep't of Justice*, 173 F. Supp. 3d 44, 56 (S.D. N.Y.) (noting a district court's decision "refusing to accord victim status for money laundering under the Mandatory Victims' Rights Act because 'society at large is generally considered to be the victim of this offense'") (citing *United States v. Crum*, No. 1:05 CR 65, 2006 WL 4102280, at *2 n. 2 (S.D. Ohio Apr. 13, 2006)).

### b. Money laundering did not proximately cause harm to Victim 1 or Victim 2.

Sanchez was convicted of *conspiracy* to commit money laundering. DE68. The MVRA's restitution standard is arguably more demanding for conspiracy offenses than for substantive offenses. A victim of a conspiracy is defined as a person "directly harmed," whereas with regard to substantive offenses, a victim is defined as a "person directly *and proximately* harmed" as the result of an offense. 18 U.S.C. § 3663A(a)(2); *United States v. Hasson*, 333 F.3d 1264, 1275 (11th Cir. 2003) (citing 18 U.S.C. § 3663A(a)(2)). For substantive offenses, the use of the term "proximately," in addition to "directly," indicates

9

that restitution encompasses not just direct harms but also *foreseeable* ones. *See Paroline v. United States*, 572 U.S. 434, 445 (2014) ("Proximate cause is often explicated in terms of foreseeability.").

By contrast, a "direct relation" between injurious conduct and an injury does not necessarily extend to "any foreseeable result." *See Bank of Am. Corp. v. City of Miami*, __U.S. __, 137 S.Ct. 1296, 1306 (2017) (cities, to prove injury from banks' predatory practices against African-American neighborhoods, had to show more than "foreseeable result," but "some direct relations between the injury asserted and the injurious conduct alleged").

In any event, whether harm is directly or proximately caused, "[t]he defendant's conduct need not be the sole cause of the loss, but it cannot be too attenuated (either factually or temporally)." *United States v. Collins*, 854 F.3d 1324, 1336 (11th Cir. 2017) (citations and brackets omitted); *In re Local # 46 Metallic Lathers Union*, 568 F.3d 81, 85 (2d Cir. 2009) (per curiam) (union not a victim of an employer's money laundering on account of the employer's avoidance of payment of union dues, because the money laundering scheme was complete when the defendant received the cash, and what he intended to do (or did) with it after that moment was irrelevant to the crime of conviction).

Here, the government, which bears the burden of proof to establish entitlement to restitution, *Hasson*, 333 F.3d at 1278, fails to show that either victim was harmed by Sanchez' money laundering conspiracy.

For the Estate of Victim 1, the government seeks restitution of over $500,000, based on a ransom payment after the kidnapping of Victim 1 in November 2009. DE106:2-3.

With regard to Victim 2, the government claims that Victim 2's family was "extorted out of $700,000," and that Victim 2 incurred roughly $70,000 worth of medical bills as a result of this extortion. DE106:3. These harms resulted from a July 2010 kidnapping. DE106:3.

But the factual proffer that accompanied Sanchez' guilty plea refers to alien smuggling involving Migrant #1 and Migrant #2 in *October 2013*. DE106:2. The financial transactions listed in the factual proffer refer to checks drawn *in September 2014 to January 2015*. DE106:2-4. Contrary to the government's claim that the harms to Victims 1 and 2 "resulted from the specific conduct underlying the offense of conviction," DE106:4, it is clear that these harms are unrelated to the money laundering conspiracy to which Sanchez pled guilty. The money laundering transactions took place years after the two kidnappings. These transactions involved checks of $10,000 or less, and did not add up to anything close to $500,000. Tellingly, the PSI did not mention the ransom payments for Victims 1 and 2 in its calculation of the amount of funds involved in the money laundering. *See* PSI ¶ 18.

The government claims that Sanchez "is accused of participating in violent acts that advanced his scheme to generate alien smuggling proceeds to be laundered in the course of the conspiracy charged in this prosecution." DE106:4. But (no doubt because money laundering is not a violent offense), the factual proffer does not mention any "violent acts." *See* DE31. Moreover, at sentencing, this Court rejected the government's request to consider the alien smuggling Guidelines, agreeing with the probation office that the information regarding the underlying alien smuggling offense was "impossible or impractical to determine." DE69:12.

11

The government claims that "Victim 1 was killed because his activities were contrary to Sanchez's scheme [and] Victim 2 was captured and extorted as part of Sanchez' efforts to raise capital for the overarching scheme." DE106:4. These factual claims might have had some traction in a case where a defendant pled guilty to a money laundering conspiracy to "*promote* the carrying on of specified unlawful activity." *See* 18 U.S.C. § 1956(a)(1)(A)(i) (emphasis added). But Sanchez was charged with conspiracy to launder money to "conceal" the nature of the proceeds. *See* DE12:3. Thus, there is no connection between the conspiracy to conceal to which Sanchez pled guilty and the extortion payments used to "raise capital for the overarching scheme." In any event, the government does not allege that the funds extorted from the families of Victim 1 and Victim 2 *in 2009 and 2010* were involved in the money laundering transactions to which he pled guilty – transactions *which occurred in 2014 and 2015*. Nor could such an allegation withstand analysis.

      **c.**    **Money laundering is not an offense "against property."**

In its restitution claim, the government relies on 18 U.S.C. § 3663A(c)(1), which mandates restitution for "an *offense against property* . . . including any offense committed by fraud or deceit." DE106:3 (emphasis added). In *United States v. Collins*, 854 F.3d 1324, 1329-35 (11th Cir. 2017), the Eleventh Circuit analyzed at length the meaning of the term "offense against property" in this restitution statute. Notably, for present purposes, *Collins* determined that the term "offense against property" was borrowed from the common-law, and referred to "traditional common-law crimes." 854 F.3d at 1332 (quoting *California v. Minjares*, 443 U.S. 916, 927 (1979) (Rehnquist, J., dissenting)). *Collins* noted that when

12

Congress borrows a common-law term "the general practice is to give that term its common-law meaning." *Id.* (citations omitted). "At common law, offenses or crimes against property referred to a specific set of criminal conduct: 'larceny, embezzlement, cheating, cheating by false pretenses, robbery, receiving stolen goods, malicious mischief, forgery, and uttering forged instruments.'" *Id*. (quoting Black's Law Dictionary 1251 (10th ed. 2014)). *Collins* added that the clause "'including those committed by fraud or deceit' [did] not broaden the meaning of 'offense against property,'" because the word "including referred to a "subset" of offenses against property, and not an "independent," separate offense. *Id*. (citation omitted).

*Collins* went on to hold that restitution could be ordered for a victim of a conspiracy to accept gratuities in connection with a bank transaction, in violation of 18 U.S.C. §§ 215 & 371. *Collins* reasoned that the defendant's conduct "corruptly facilitated" taking money from a Wells Fargo bank account – money that "belonged to Wells Fargo." *Id* at 1335. *Collins* therefore affirmed the district court's order of restitution to Wells Fargo.

Admittedly, *Collins* "decline[d] to apply [a] categorical approach to determine whether a conviction qualifies as an 'offense against property.'" *Id*. at 1334. Instead, *Collins* "focused on the conduct underlying the offense of conviction." *Id*. at 1334-35. In Section 3(b) of this Memorandum, *supra*, Sanchez addressed why his conduct underlying his offense of conviction does not qualify for restitution for Victims 1 and 2. This factual analysis, however, may be unnecessary, because concealment money laundering simply cannot qualify as an "offense against property."

First, money laundering does not meet the definition of an "offense against property"

because it is not a traditional common law crime. *Collins*, 854 F.3d at 1332 (citation omitted). When Congress enacted the offense of conspiracy money laundering statute, in 1986, it created a "*new* offense." *Whitfield v. United States*, 543 U.S. 209, 212, 216 (2005) (emphasis added) (finding that the money laundering statute, unlike 18 U.S.C. § 371, contained no overt act requirement).

Second, a money laundering conspiracy is an agreement to commit a "financial transaction [involving] the proceeds of some of form of unlawful activity." 18 U.S.C. § 1956(a)(1). Money laundering thus involves a financial transaction in the proceeds of a "*completed* criminal offense." *United States v. Nolan*, 223 F.3d 1311, 1315 (11th Cir. 2000) (emphasis added). By definition, therefore, when a money laundering transaction occurs, any offense *against* property that generated illicit "proceeds" has already been completed. Money laundering is a subsequent "movement of funds." *See* 18 U.S.C. § 1956(c)(3) (defining the term "financial transaction"). This movement of funds might then enable criminals "to support a luxurious lifestyle," or facilitate their access to "dirty money." *United States v. Santos* 553 U.S. 535 (2008) (Alito, J. dissenting), *superseded by statute*, Fraud Enforcement Recovery Act of 2009. But this movement of funds is not an offense against property.

WHEREFORE, Sanchez moves this Court to dismiss the government's restitution claims.

Respectfully submitted,

 s/ Timothy Cone
Timothy Cone, Esq.
Fla. Bar No. 0980986
1615 New Hampshire Avenue NW
4th fl. (North)
Washington DC 20009
Tel. (202) 862-4333
E-Mail: timcone@comcast.net

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rules 7.1(a)(3)(B) and 88.9, I hereby certify that on July 15, 2020, I conferred with Ignacio Vasquez, Chief, Special Prosecutions Section-Violent Crime Coordinator, about the relief sought in this motion. Counsel for both parties agreed that given their scheduled leave this summer, it was appropriate for movant to go ahead and file his motion, and for the government to state any opposition in a response.

 s/ Timothy Cone
Timothy Cone, Esq.

## CERTIFICATE OF SERVICE

I HEREBY certify that on July 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and thereby served counsel of record.

                                       /s/ Timothy Cone
                                       Timothy Cone, Esq.

## SERVICE LIST

**United States District Court**
**Southern District of Florida**

United States v. George Ferrer Sanchez
Case No. 19-20085-CR-COOKE

| | |
|---|---|
| **Timothy Cone** | **Ignacio Jesus Vazquez** |
| Florida Bar No. 0980986 | Assistant United States Attorney |
| 1615 New Hampshire Avenue, NW | 99 Northeast 4th Street |
| 4th floor (North) | Miami, FL 33132-2111 |
| Washington DC 20009 | Tel: 305-961-9318 |
| Tel: (202) 862-4333 | Fax: 305-536-4699 |
| timcone@comcast.net | Email: ignacio.vazquez@usdoj.gov |
| | Attorney for the Government |
| Attorney for Defendant | Service via CM/ECF |
| Service via ECF | |