**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-20085-CR-COOKE**

**UNITED STATES OF AMERICA**

**v.**

**GEORGE FERRER SANCHEZ,**

      **Defendant.**

_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS RESTITUTION CLAIMS

The United States, by and through the undersigned Assistant United States Attorney, files this Response in Opposition to the Defendant's Motion to Dismiss Restitution Claims (DE 120).

The United States has identified two restitution claims resulting from the conspiracy to commit money laundering. Through this submission, the United States seeks an award of $500,000 to the estate of Victim 1; and an award of $770,000 to Victim 2.

### I.    BACKGROUND

The restitution claims arise from a multi-agency initiative targeting a criminal network operating in Florida, Cuba, Mexico, the Dominican Republic, Haiti, and elsewhere. Through the investigation, defendant George Ferrer Sanchez (SANCHEZ or the Defendant) was identified as one of several principal actors in a network of criminal groups operating in the area of Cancun, Mexico (hereinafter the Cancun Network) responsible for the smuggling of migrants from the Yucatan Peninsula to the United States. Predominantly, members of the Cancun Network organized to smuggle migrants, often from Cuba, using stolen vessels and engines acquired from the United States.

As part of this investigation, law enforcement learned that SANCHEZ and fellow Cancun Network participants advanced their capacity to profit from the human smuggling and money laundering schemes through a litany of crimes. Concerning the restitution claims, the United States has received first-hand accounts of how SANCHEZ utilized a team of associates assembled to conduct criminal ventures to target rivals and generate criminal proceeds.

## II. THE RESTITUTION CLAIMS

Below, the United States has identified two victims of SANCHEZ's efforts to use violence in the course of his alien smuggling and money laundering schemes. Both of the asserted restitution claims occurred during the conspiracy's window of operation of January 2009 or earlier and continuing to at least June 2015, as admitted to by the Defendant. Further, according to the witnesses the United States seeks to present, both victims were harmed in relation to the charged conspiracy.

For purposes of clarity, and contrary to the Defendant's assertion, (*See* DE120, Pg. 12), United States has advanced the restitution claims by the victims (or their estate in the case of Victim 1) under the range of all available statutes and has sought to proceed under all applicable terms of the Mandatory Victims' Rights Act (hereinafter MVRA).

### i. Estate of Victim 1, November 28, 2009, Kidnapping, Extortion and Homicide Event

As part of the SANCHEZ's smuggling scheme, he interacted with representatives for the Mexican Criminal Organizations (MCOs) who collected taxes from smugglers operating in the Cancun region. Under his admissions, SANCHEZ has represented that Victim 1 served as a representative for the MCOs responsible for collecting a criminal tax imposed on human smugglers

in the Cancun Network.  The United States understands that SANCHEZ vehemently resisted paying the MCOs and rejected their oversight.

Through the testimony of a cooperating witness, the United States has learned that SANCHEZ organized a venture which called for travel from South Florida to Mexico for the purpose of kidnapping and extorting Victim 1 in November of 2009.  According to the cooperating defendant witnesses, Victim 1 was shot during the kidnapping effort.  Subsequently, Victim 1's family was extorted by SANCHEZ and his associates for over $500,000 in exchange for his release. Despite his family transmitting a ransom payment, Victim 1 was never heard from again and is presumed to be deceased.

### ii.   Victim 2, July 12, 2010, Kidnapping and Extortion Event

The United States has also been apprised that SANCHEZ recruited associates to participate in the July 12, 2010 kidnapping of Victim 2 in Cancun, Mexico.  According to the information garnered through the investigation, the United States understands that SANCHEZ utilized the kidnapping to generate capital for his overarching alien smuggling scheme. Victim 2 has informed investigators that he was kidnapped in Cancun, Mexico, and extorted out of $700,000. During the kidnapping, Victim 2 was tortured and beaten while on the phone with his family.   A Cooperating Defendant also reported to investigators that he collected the extortion payment on behalf of SANCHEZ in Miami, Florida as part of the operation.

Victim 2 reported that he incurred roughly $70,000 worth of medical bills due to the physical abuse suffered during the extortion.

### III.     ARGUMENT

#### a. The Defendant's Money Laundering Scheme is a Proper Basis for the Restitution Claims.

The Eleventh Circuit and a number of its sister courts have recognized that a money laundering conspiracy may predicate victim restitution claims. In *United States v. Cunningham*, the Eleventh Circuit found that claimants were identifiable "victims" of money laundering scheme under the statutory definition of the term under the Mandatory Victims Restitution Act of 1996 (18 U.S.C.A. § 3663A) (MVRA).   The Eleventh Circuit rejected the assertion that restitution was prohibited because money laundering was a "victimless" crime. No. 06-12415, 210 Fed. Appx. 938, *939, 2006 WL 3690694, at **1 (11th Cir. Dec. 14, 2006). The *Cunningham* Court sustained a $150,000 restitution award against a lawyer whose role in a Ponzi scheme - including making wire transfers from an escrow account - "decreased the amount of money the government could seize to return to the [victim] churches." *Id.,* 210 Fed. Appx. at *939-*40, 2006 WL 3690694, at **1-**2.

Similarly, in *United States v. Paradis,* 219 F.3d 22, 25 (1st Cir. 2000), the First Circuit made clear that "restitution" under the MVRA "may be appropriate" in a money laundering case "to the extent identifiable victims" - *i.e.,* " 'persons directly and proximately harmed' " by the offense - "exist." *Id.* at 24-25 (quoting 18 U.S.C. § 3663A(a)(2)). Along the way, the Court rejected as "untenable" the defendant's argument - based on decisions applying U.S.S.G. § 3D1.2's "grouping provisions"[5] -  that restitution is  unavailable  because money laundering victimizes "society alone." *Id.*

Deeming the Guidelines cases "inapposite,"[1] the Court reasoned that they "do[] not implicate the construction of the restitution statute, 18 U.S.C. § 3663A, nor do[ they] purport to [hold] that money laundering could not produce an identifiable victim." *Id.* at 24. On the facts in *Paradis,* however, the Court was constrained to vacate the restitution award, finding "no evidence" the laundering conduct actually "harm[ed]" any victim there - *"i.e.,* no evidence" a bankruptcy trustee or a debtor's creditors "filed claims that went unpaid." *Id.* at 25.

Indeed, courts have long awarded restitution in money laundering prosecutions such as the one at hand. *See, e.g., United States v. Hussain,* No. 06-0688-cr., 225 Fed. Appx. 22, *23-*24, (2d Cir. May 25, 2007) (defendant properly sentenced to "63 months' imprisonment and $303,935.23 in restitution upon a plea of guilty to one count of laundering the proceeds of credit card fraud"); *see also United States v. Hinojosa,* 484 F.3d 337, 338, 343 (5th Cir.) (restitution properly awarded, though incorrectly calculated, as part of "sentence for money laundering imposed after a guilty plea");  *see also United States v. Chilingirian,* No. 02-1695, 95 Fed. Appx. 782, *784-*85, *793-*94,   2004   WL   771175,   at   **1,   **9   (6th Cir.   April   9,   2004)   (affirming

---

1 Similarly, at various points in his motion, the Defendant invokes inapposite authority addressing the sentencing guidelines in his motion to dismiss the restitution claims.   *United States v. Martin*, 320 F.3d 1223, 1227 (11th Cir. 2003), DE120, Pg. 7 (addressing whether "the district court did not misinterpret 'the value of the funds' under § 2S1.1" rather than the award of restitution); *see also United States v. Acuna*, 313 F. App'x 283, 299-300 (11th Cir. 2009), DE120, Pg. 8, n. 1, (concluding that money laundering facilitated by violence justified significant forfeiture award); see also *United States v. Aptt*, 354 F.3d 1269, 1276 (8th Cir. 2004), DE120, Pg. 8, n. 1, (also addressing guideline calculations rather than availability of restitution award); *see also United States v. Napoli*, 179 F.3d 1, 7-8 (2d Cir. 1999), DE120, Pg. 8, n. 1 (also addressing guideline calculations rather than availability of restitution award); *see also United States v. Lopez*, 104 F.3d 1149, 1150 (9th Cir.1997), DE120, Pg. 8, n. 1, (also addressing guideline calculations rather than availability of restitution award); see also *United States v. Braxtonbrown*, 278 F.3d 1348, 1355 (D.C. Cir. 2002), DE120, Pg. 8, n. 1, (also addressing guideline calculations rather than availability of restitution award).

$335,167.50 restitution award upon non-jury conviction of single money laundering conspiracy count), *vacated on other grounds,* 543 U.S. 1098 (2005); *see also United States v. Brango,* No. 01-10169, 38 Fed. Appx. 422, *423-*24, 2002 WL 461748, at **1 (9th Cir. Feb. 5, 2002) (dismissing appeal and approving $686,400 restitution order upon conviction by guilty plea of "one count of money laundering and aiding and abetting"); *United States v. Rashid,* 274 F.3d 407, 410 (6th Cir. 2001) (restitution of $6.5 million imposed upon guilty plea to money laundering conspiracy); *see also United States v. Polichemi,* 219 F.3d at 703-03, 707-08, 714 (7th Cir. 2000) (restitution properly ordered upon lawyer's jury conviction for laundering proceeds of prime banking scam whose "largest pats[ies]," among some 30 "victimized" investors, were the Chicago Housing Authority's "pension funds").

Under the rubric of precedent establishing that victims harmed by money laundering conspiracies may seek redress under the MVRA it is plain that restitution claims are properly before the Court and should not be dismissed.

### b.  The Claimants Have Asserted Proper Claims Under the MVRA

Under the MVRA, a victim "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). Further, "the courts have held that restitution may be ordered to a victim not named in the indictment, provided that the victim was directly harmed by the defendant's criminal conduct in the course of a scheme or conspiracy.'" *United States v. Dickerson*, 370 F.3d 1330, 1339 (11th Cir. 2004) quoting *United States v. Henoud,* 81 F.3d at 484, 489 (4th Cir. 1996). Rather than the more demanding standard envisioned by the Defendant, "'when the crime of conviction includes a scheme, *conspiracy*, or pattern of criminal activity as an element of the

offense,' the court may order restitution for 'acts of *related* conduct for which the defendant was not convicted,' *United States v. Lawrence,* 189 F.3d 838, 846 (9th Cir.1999), at least when such conduct occurred within the statute of limitations." *Dickerson*, 370 F.3d at 1339 (emphasis added). The Eleventh Circuit has unambiguously rejected "attempts to narrow the scope of 'victim' under the statute." *United States v. Brown*, 665 F.3d 1239, 1253 (11th Cir. 2011).

Here SANCHEZ is accused of participating in violent acts that advanced his scheme to launder alien smuggling proceeds in the course of the conspiracy charged in this prosecution. Because the victims were harmed in relation to the laundering scheme's operation, the claimants suffered harm related to the offense of conviction.  As addressed above, Victim 1 was killed because his activities were contrary to SANCHEZ's scheme.   Victim 2 was captured and extorted as part of SANCHEZ's efforts to raise capital for the overarching scheme.   Therefore, each claim is appropriately related to the money laundering scheme and provides a basis for the sought-after awards.

The Defendant posits that because he was charged with a conspiracy to conceal, rather than promote, he is shielded from restitution claims. Yet the Defendant fails to explain why violence committed to promote unlawful activity is worthy of restitution, but violence in aid of a concealment scheme is not.  The pursued distinction is without a difference in the Eleventh Circuit's eyes, which has held restitution available to victims of conduct related to the offense of conviction.

Particularly because the Defendant's conviction was for a conspiracy, rather than a substantive act, his victims may be awarded restitution for related conduct related to laundering piracy that did not result in a conviction.  *Dickerson*, 370 F.3d 1330, 1339 (11th Cir. 2004).   In

accord with his proffer and the Presentence Investigation Report, the Defendant was part of multinational conspiracy stole vessels, smuggled humans on stolen, used phone lines to collect money from the families of migrants, and laundered funds to conceal its activities. The witnesses will explain at the restitution hearing how the reported extortions, violence, torture, and killing were related conduct, thereby showing how the claimants were harmed by the wake of the Defendant's conspiracy. Accordingly, there is no basis for dismissing the claimants' pursuit of restitution.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully asks that the Court order a restitution award to the estate of Victim 1 in the amount of $500,000; and an award $770,000 to Victim 2.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   /s/ Ignacio J. Vázquez, Jr.
Ignacio J. Vázquez, Jr.
Assistant United States Attorney
Florida Bar No. 16275
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9318
Fax: (305) 530-7976

Page **8** of **9**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded onto the

Court's CM/ECF system and sent via CM/ECF to all counsel of record.

/s/ Ignacio J. Vázquez, Jr.
Ignacio J. Vázquez, Jr.
Assistant United States Attorney